UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | |
|---|---|
| CARLOS JOSE JAUREGUI MORA,<br><br>    Petitioner,<br><br>v.<br><br>KRISTI NOEM, et al.,<br><br>    Respondents. | No. 1:25-CV-284-H |

## ORDER

Before the Court is Carlos Jose Jauregui Mora's emergency motion for a temporary restraining order. Dkt. No. 2. Jauregui Mora contends that the Central District of California's orders in *Maldonado Bautista v. Santacruz*, No. 5:25-CV-1873, entitle him to a bond hearing. *Id.* at 2. He also contends that his detention without bond, under recent Board of Immigration Appeals precedent, violates the Fifth Amendment's Due Process Clause and the Immigration and Nationality Act. *Id.* at 3. However, this Court is not bound by the advisory opinions in *Maldonado Bautista*, and Jauregui Mora's arguments flatly contradict longstanding principles of constitutional law, the INA's plain language, and the history of legislative changes enacted by Congress. Thus, Jauregui Mora fails to meet the high bar for emergency relief, and the Court denies the motion.

1.  **Background**

Jauregui Mora is a citizen of Venezuela who illegally entered the United States in 2021. *See* Dkt. No. 1 at 6. In October 2025, ICE detained Jauregui Mora and transferred him to the Bluebonnet Detention Center in Anson, Texas, where he remains in custody. *Id.* ICE has denied Jauregui Mora bond under its mandatory-detention policy. *Id.* at 6–7.

On December 18, 2025, Jauregui Mora filed a petition for a writ of habeas corpus (Dkt. No. 1) and a motion for a temporary restraining order (Dkt. No. 2). On the date of this Order, the Court ordered the respondents to show cause why Jauregui Mora's petition should not be granted. Dkt. No. 4. The Court gave the respondents 20 days to file their answer. *Id.* at 1. Briefing is still underway.

**2.     Legal Standard**

Federal Rule of Civil Procedure 65 authorizes courts to issue temporary restraining orders and injunctions. A temporary restraining order, or TRO, is "simply a highly accelerated and temporary form of preliminary injunctive relief." *Hassani v. Napolitano*, No. 3:09-CV-1201, 2009 WL 2044596, at *1 (N.D. Tex. July 15, 2009). Thus, the party seeking a TRO or preliminary injunction must satisfy the same four-factor standard for preliminary injunctive relief. *Greer's Ranch Café v. Guzman*, 540 F. Supp. 3d 638, 645 (N.D. Tex. 2021). The party seeking relief must show (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm; (3) the balance of hardships weighs in the movant's favor; and (4) issuing the injunction will not disserve the public interest. *Daniels Health Scis., LLC v. Vascular Health Scis., LLC*, 710 F.3d 579, 582 (5th Cir. 2013).

A TRO, like any injunction, is an "extraordinary remedy." *Lewis v. S.S. Baune*, 534 F.2d 1115, 1121 (5th Cir. 1976). "The decision to grant [such relief] 'is to be treated as the exception rather than the rule.'" *Jones v. Bush*, 122 F. Supp. 2d 713, 718 (N.D. Tex. 2000) (quoting *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985)). To prevail, the movant "must satisfy a cumulative burden of proving each of the four elements" for injunctive relief. *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987). "Otherwise stated, if a party fails to meet *any* of the four requirements, the court cannot

grant the TRO or preliminary injunction." *Speed v. America's Wholesale Lender*, No. 3:14-CV-3425, 2014 WL 4755485, at *1 (N.D. Tex. Sept. 24, 2014) (emphasis in original).

**3.   Analysis**

Jauregui Mora fails to demonstrate a substantial likelihood of success on the merits, which is fatal to his motion for TRO and preliminary injunction. The Court recognizes that Jauregui Mora's habeas petition raises additional arguments that were not included in his emergency motion for TRO or preliminary injunction. Given the need to resolve the motion on an accelerated timeline, the Court will address all other arguments when resolving Jauregui Mora's habeas petition (Dkt. No. 1), which remains pending.

**A.   The *Maldonado Bautista* class action does not require this Court to grant relief.**

In three orders dated November 20, November 25, and December 18, 2025, the Central District of California purported to declare a DHS policy detaining illegal aliens under the mandatory-detention provision rather than the discretionary-detention provision unlawful and further purported to vacate that policy.[1] *See* ___ F. Supp. 3d ___, 2025 WL 3289861 (C.D. Cal. Nov. 20, 2025) (granting declaratory relief to individual petitioners); ___ F.R.D. ___, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025) (certifying class and granting class-wide declaratory relief); No. 5:25-CV-1873, Dkt. No. 92 (C.D. Cal. Dec. 18, 2025) (purporting to vacate DHS's mandatory-detention policy but declining to vacate *Yajure Hurtado*'s mandatory-detention policy).

---

[1] Although Section 1226(c) also mandates detention for certain classes of aliens, this Order refers to Sections 1225 and 1226 as the mandatory- and discretionary-detention provisions, respectively, for the sake of simplicity.

That policy dates to a July 2025 notice titled "Interim Guidance Regarding Detention Authority for Applicants for Admission." *See Maldonado Vazquez v. Feeley*, ___ F. Supp. 3d ___, No. 2:25-CV-1542, 2025 WL 2676082, at *5 & n.2 (D. Nev. Sept. 17, 2025) (describing the leaked DHS notice and noting that the government did not object to its authenticity). This notice advised that "section 235 of the [INA], rather than section 236"—that is, the mandatory-detention provision, not the discretionary-detention provision—"is the applicable immigration detention authority for all applicants for admission." *ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, AILA Doc. No. 25071607, Am. Immigr. Laws. Ass'n (July 8, 2025).[2] The BIA adopted this broader application of the mandatory-detention provision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025).

The BIA acknowledged that "for years Immigration Judges have conducted bond hearings for aliens who entered the United States without inspection," but it did "not recall either DHS or its predecessor, the Immigration and Naturalization Service," ever challenging that practice. *Id.* at 225 n.6. But after reviewing the parties' contentions, the BIA determined that immigration judges lack authority to grant aliens who illegally enter the United States bond hearings. *Id.* at 229. Thus, two independent agency actions—the DHS policy and the BIA decision in *Yajure Hurtado*—concluded that aliens who illegally enter the United States are not entitled to bond hearings.

The Court addressed whether the three *Maldonado Bautista* orders have the authority to bind this Court in *Calderon Lopez v. Lyons*, ___ F. Supp. 3d ___, No. 1:25-CV-226, 2025

---

[2] https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission [https://perma.cc/5GKM-JYGX].

WL 3683918 (N.D. Tex. Dec. 19, 2025).  For a myriad of reasons, the Central District of California's purported relief is a legal nullity.

First, because *Maldonado Bautista* only purports to vacate the DHS policy and not *Yajure Hurtado*—which likewise sets forth an identical mandate for DHS employees to deny bond—the orders do not offer preclusive relief.  *Id.* at *8–9.  Because the orders do not offer preclusive relief, they are "contrary to Article III's strict prohibition on issuing advisory opinions."  *Id.* at *8 (quoting *Haaland v. Brackeen*, 599 U.S. 255, 294 (2023) (internal quotation marks omitted)).

Second, the INA clearly prohibits the Central District from entertaining jurisdiction over class actions and challenges to the validity of the bond system, instead reserving judicial review for the District for the District of Columbia alone.  *Id.* at *10–11 (discussing 8 U.S.C. § 1252(e)(1), (e)(3)(A)).

Third, the unusual structure of the purported relief would necessitate one of two courses of action—denying this petition and ordering Jauregui Mora to refile in the Central District or adopting the Central District's reasoning as binding on this Court—both of which would require this Court to rebuke Supreme Court precedent.  *Id.* at *12–14; *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (limiting habeas claims to the district of detention); *Garland v. Aleman Gonzalez*, 596 U.S. 543, 554–55 (2022) (prohibiting class-wide injunctive relief under the INA); *Trump v. CASA, Inc.*, 606 U.S. 831, 850 (2025) (prohibiting "class-action workaround[s]").

Because the Central District acted beyond its authority, its orders are "simply void," and cannot bind this Court.  2025 WL 3683918, at *6 (quoting *Williamson v. Berry*, 49 U.S. (8 How.) 495, 541 (1850) (further quotation omitted)).

### B. Jauregui Mora is unlikely to show that his detention without bond violates the Fifth Amendment's Due Process Clause.

Jauregui Mora maintains that his detention without bond contravenes his due process rights under the Fifth Amendment. Dkt. No. 2 at 2.[3] His argument, however, suffers from several flaws. First, the Supreme Court has endorsed the constitutionality of detaining aliens without bond during the pendency of removal proceedings. In *Demore v. Kim*, the Supreme Court upheld the constitutionality of Section 1226(c) of the INA, which requires that certain aliens be detained during removal proceedings without bond. 538 U.S. 510, 522 (2003). The Supreme Court acknowledged that "the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Id.* at 523 (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). But it clarified that "detention during deportation proceedings" is nevertheless a "constitutionally valid aspect of the deportation process." *Id.* Indeed, "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal." *Id.* at 528. To the contrary, "Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Id.* at 522. Accordingly, "the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Id.* at 526.

Jauregui Mora ignores these background principles. Instead, he relies solely on the three-factor balancing test from *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See* Dkt. No. 2 at 7–9. The *Mathews* test, while common, is not the only tool for resolving procedural due process challenges. The Supreme Court said as much: "[W]e have never viewed *Mathews* as

---

[3] Each of Jauregui Mora's contentions are one sentence in length. *See* Dkt. No. 2 at 2. Nonetheless, the Court will explain here, as it has in other cases, why Jauregui Mora's motion fails to demonstrate a likelihood of success. *See Garibay-Robledo v. Noem*, ___ F. Supp. 3d ___, No. 1:25-CV-177, 2025 WL 3264482, at *3–5 (N.D. Tex. Sept. 15, 2025)

announcing an all-embracing test for deciding due process claims." *Dusenbery v. United States*, 534 U.S. 161, 168 (2002). In fact, the "Supreme Court when confronted with constitutional challenges to immigration detention has not resolved them through express application of *Mathews*." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022). Jauregui Mora provides no reason why the Court should apply *Mathews* here.

That said, Jauregui Mora's detention is likely constitutional even under *Mathews*. Applying that test, courts consider: (1) the individual's private interest; (2) the risk of erroneous deprivation of the right absent further procedures; and (3) the government's interest. 424 U.S. at 335. "Ultimately, *Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz*, 53 F.4th at 1206 (citing *Landon v. Plasencia*, 459 U.S. 21, 34 (1982)).

Jauregui Mora does not explain why these factors favor his release. *See* Dkt. No. 2 at 2. Even so, each factor weighs against his release. The first factor considers the individual's private interest, but this interest must be considered alongside the Supreme Court's clear admonition that "detention during deportation proceedings [i]s a constitutionally valid aspect of the deportation process." *Demore*, 538 U.S. at 523. Next, even if the second factor—the risk of erroneous deprivation—weighed in Jauregui Mora's favor, it would be outweighed by the government's "sovereign prerogative[s]" in matters of immigration. *Landon*, 459 U.S. at 34; *see Dep't of State v. Muñoz*, 602 U.S. 899, 912 (2024) (noting the government's "sovereign authority to set the terms governing the admission and exclusion of noncitizens"). Thus, even if *Mathews* applies, Jauregui Mora has not shown a substantial likelihood of success on his procedural due process claim.

### C. The text of the INA weighs heavily against Jauregui Mora's position regarding the availability of bond.

Jauregui Mora also argues that his detention without bond violates the INA. Dkt. No. 2 at 2. He does not explain why, except insisting that *Yajure Hurtado* is wrong and that "nearly 100 federal district court[s]" agree with his position. *Id.* at 3. That many courts agree with Jauregui Mora means this debate is a lively one, but this Court counts upon the careful consideration of the law and not a vague number of uncited district court opinions.

Whether the INA's mandatory-detention or discretionary-detention provision applies here is a question of statutory interpretation. When the Court interprets statutes, "[t]he statutory text is invariably the first and primary consideration." *Barr v. SEC*, 114 F.4th 441, 448 (5th Cir. 2024). And if the text is "clear and unambiguous, the interpretive inquiry ends." *Id.*

As this Court explained in *Garibay-Robledo*, the statutory text favors the respondents' detention policy. The mandatory-detention provision applies to "applicants for admission," not merely arriving aliens. 8 U.S.C. § 1225(b). To be sure, an arriving alien is an applicant for admission: Subsection 1225(a)(1) defines applicant for admission, in part, as "[a]n alien . . . who arrives in the United States." But the same provision also defines an applicant for admission as "[a]n alien present in the United States who has not been admitted." *Id.* Granted, this is not the most intuitive definition of the term. But it is the one that Congress enacted into law. And although courts generally construe statutory terms according to their ordinary meaning, "'[w]hen a statute includes an explicit definition, [the Court] must follow that definition,' even if it varies from a term's ordinary meaning." *Digit. Realty Tr., Inc. v. Somers*, 583 U.S. 149, 160 (2018) (quoting *Burgess v. United States*, 553 U.S. 124, 130 (2008)). Thus, given that Jauregui Mora is "[a]n alien present . . . who has not

been admitted," the plain language of the mandatory-detention provision weighs heavily against his assertion that he is subject only to discretionary detention. § 1225(a)(1); *see Garibay-Robledo*, 2025 WL 3264482, at *3–5; *Montoya Cabanas v. Bondi*, No. 4:25-CV-4830, 2025 WL 3171331, at *4–6 (S.D. Tex. Nov. 13, 2025) (adopting *Garibay-Robledo*'s reasoning in denying a habeas petition).

The Executive Office of Immigration Review's (EOIR) regulations, which were drafted following the Illegal Immigration Reform and Immigration Responsibility Act of 1996's (IIRIRA) enactment, confirm this understanding of the term "applicants for admission." One such regulation provides that "*[d]espite being applicants for admission*, aliens who are present without having been admitted or paroled . . . will be eligible for bond and bond redetermination." *Inspection and Expedited Removal of Aliens*, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) (emphasis added). This regulation explains that "[t]he effect of this change is that inadmissible aliens, except for arriving aliens, have available to them bond redetermination hearings before an immigration judge, while arriving aliens do not." *Id.* The clear implication of this language is that, despite possessing the authority to deny bond to broad classes of aliens, the government previously declined to exercise the full extent of its authority under the INA.

But DHS's July 2025 policy requiring detention under the mandatory-detention provision changed course. And that position was equally adopted in *Yajure Hurtado*.[4]

---

[4] Once again, even assuming the *Maldonado Bautista* orders vacate the DHS policy (issues of judicial review notwithstanding), the *Yajure Hurtado* policy remains in place.

### D. The statutory history of the INA supports the Court's interpretation of the mandatory-detention provision.

"Statutory history, 'the record of enacted changes Congress made to the relevant statutory text over time,' can also provide helpful context" for interpreting statutory language. *United States v. Moore*, 71 F.4th 392, 395 (5th Cir. 2023) (quoting *BNSF Ry. Co. v. Coos*, 586 U.S. 310, 329 (2019) (Gorsuch, J., dissenting) (emphasis omitted)). And the statutory history of the INA confirms the Court's interpretation of the term "applicants for admission."

By enacting the IIRIRA, Congress sought to replace the so-called entry doctrine, in which the manner of immigration proceedings turned on whether an alien had entered the country, with a process based on admission. *See Martinez v. Att'y Gen.*, 693 F.3d 408, 413 n.5 (3d Cir. 2012) ("Prior to the [IIRIRA], the INA assessed status on the basis of 'entry' as opposed to 'admission.'"). Under the entry doctrine, an alien who had entered the United States was entitled to greater procedural protections, including a deportation hearing. *Id.* The result was a system that rewarded aliens who illegally entered the country with greater procedural protections than those who properly applied for admission at the border.

Thus, the IIRIRA amended the INA to make admission, not entry, the relevant criterion for removal procedures. *Id.* The INA defines "admission" as "the *lawful* entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A) (emphasis added). By defining "applicants for admission" broadly enough to encompass both arriving aliens and aliens who enter illegally, Congress removed the previously existing incentives to enter the country illegally.

– 10 –

  **E. A hearing is not necessary to resolve the motion.**

  Generally, "oral argument on a motion will not be held" unless "otherwise directed by the presiding judge." Local Civ. R. 7.1(g). The Court has wide discretion in determining whether to hold a hearing. *See Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996). Here, the relevant issues—which amount to questions of statutory interpretation—are adequately presented in the parties' "comprehensive memoranda in support of their positions." *See id.* (noting that, under Rule 65, "no oral hearing is required" where "no factual dispute is involved"). Thus, a hearing would not materially advance the Court's resolution of Jauregui Mora's motion.

**4. Conclusion**

  Because Jauregui Mora fails to show a substantial likelihood of success on the merits, the Court denies his emergency motion for TRO or preliminary injunction (Dkt. No. 2). Jauregui Mora's habeas petition (Dkt. No. 1) remains pending.

  So ordered on December 20, 2025.

_____
JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE